UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION

| | |
|---|---|
| **In Re:** )<br>**PORTER'S PENINSULA LOGGING, LLC,** )<br>)<br>**Debtor.** ) | Chapter 11<br>Case No. 23-20563<br>Hon. Daniel S. Opperman |

AMENDED
CHAPTER 11 PLAN OF REORGANIZATION
FOR SMALL BUSINESS DEBTOR UNDER SUBCHAPTER V

Rozanne M. Giunta (P29969)
Warner Norcross + Judd LLP
715 E. Main Street, Suite 110
Midland, Michigan 48640
(989) 698-3758
rgiunta@wnj.com

*Counsel to the Debtor-in-Possession*

Dated: October 31, 2023

# TABLE OF CONTENTS

Article I. Disclosures ............................................................................................5

    A.  Brief History of the Business Operations. ...........................................5

    B.  Events Leading to Bankruptcy Filing. ...............................................5

    C.  The Debtor's Assets and Liabilities..................................................5

    D.  Plan Summary.....................................................................................6

    E.  Liquidation Analysis..........................................................................6

    F.  Projections and Plan Feasibility.........................................................7

Article II. Classification of Claims and Interests ........................................................8

Article III. Treatment of Non-Classified Claims ........................................................9

    A.  Administrative Claims. ......................................................................9

    B.  Administrative Claims under Sections 507(a)(2) and (a)(3) of the Bankruptcy Code. .......9

    C.  Professional Fee Claims.....................................................................9

Article IV. Treatment of Claims and Interests under Plan...........................................10

    A.  Treatment of Claims and Interests. ..................................................10

    B.  Voting Classes, Presumed Acceptance by Non-Voting Classes........................13

    C.  Confirmation Pursuant to section 1191(b) of the Bankruptcy Code..................13

    D.  Controversy Concerning Impairment ..............................................13

Article V. Preservation of Causes of Action................................................................13

Article VI. Allowance and Disallowance of Claims....................................................14

    A.  Disputed Claims Process...................................................................14

    B.  Prosecution of Objections to Claims................................................14

Article VII. Executory Contracts and Unexpired Leases............................................14

    A.  Insurance Policies. ............................................................................14

    B.  Reservation of Rights........................................................................14

Article VIII. Means for Implementation of the Plan............................................................15

    A.  Global Settlement of Claims and Interests..........................................................15

    B.  Confirmation of the Plan under Section 1191(b)...............................................15

    C.  Vesting of Assets in the Debtor. .......................................................................15

    D.  Management of the Business. ............................................................................16

    E.  Sources of Consideration for Plan Distributions. .............................................16

    F.  Delivery of Distributions. ................................................................................16

    G.  Modification of the Plan. ..................................................................................17

    H.  Default under the Plan; Appropriate Remedies. ...............................................18

    I.  Termination of Subchapter V Trustee Service..................................................18

    J.  Case Closure. ...................................................................................................18

Article IX. Discharge of Claims and Release ...................................................................19

    A.  Discharge. .......................................................................................................19

    B.  Release. ...........................................................................................................19

    C.  Injunction. .......................................................................................................20

Article X. General Provisions ..........................................................................................20

    A.  Defined Terms. ................................................................................................20

    B.  Rules of Interpretation. ....................................................................................25

    C.  Computation of Time. ......................................................................................26

Article XI. Other Provisions ............................................................................................26

    A.  Confirmation Hearing and Objection Deadline. ...............................................26

    B.  Acceptance and Rejection of Plan. ...................................................................26

    C.  Nonconsensual Confirmation...........................................................................26

    D.  Immediate Binding Effect.................................................................................27

    E.  Retention of Jurisdiction. .................................................................................27

23-20563-dob   Doc 82   Filed 10/31/23   Entered 10/31/23 13:57:45   Page 3 of 47

F.   Entire Agreement and Non-severability. ..........................................................................27

G.   Effect of Non-occurrence of Effective Date. ....................................................................28

H.   Governing Law. .................................................................................................................28

I.    Tax Consequences. ............................................................................................................28

J.    Reservation of Rights..........................................................................................................28

K.   Waiver or Estoppel. ...........................................................................................................28

L.    Successors and Assigns.......................................................................................................29

23-20563-dob    Doc 82    Filed 10/31/23    Entered 10/31/23 13:57:45    Page 4 of 47

# ARTICLE I.
## DISCLOSURES

The Debtor proposes this Plan for the resolution of the outstanding Claims against the Debtor pursuant to Subchapter V of chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article X of this Plan. The following disclosures are provided pursuant to section 1190(1) of the Bankruptcy Code.

All creditors and equity security holders should refer to Articles III through VIII of this Plan for information regarding the precise treatment of their claims or interests**. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Please refer to Order Establishing Deadlines and Procedures in the Case of a Small Business Debtor Who Has Elected to Have Subchapter V of Chapter 11 Apply [Dkt. #34] for important information regarding Plan voting and objection deadlines.**

A.      *Brief History of the Business Operations.*

Debtor commenced this limited liability company on November 3, 2016 ("LLC"). Todd Porter formed this LLC and has continued to operate under that LLC to date. The Debtor's primary business is cutting lumber and selling lumber and related wood products to companies such as Weyerhaeuser, Georgia Pacific and various other companies.

B.      *Events Leading to Bankruptcy Filing.*

The business was started in October 2016. In August 2018, the business purchased a used 2015 Komatsu XT430-2 with a new Risley R24-B harvester head from Roland Machinery out of Escanaba Michigan. There was a year of serious problems with said harvester head. In July 2021 the business purchased a new Komatsu XT430-5 from Roland Machinery out of Escanaba Michigan.

The Debtor continued to operate successfully through early 2023. In July of 2021, the LLC purchased a new XT430-5 Feller Buncher ("Harvester") from Komatsu Financial Limited Partnership ("Komatsu"). These payments were very high, and Todd Porter regularly had issues with the equipment to the point that the business was out of commission for several weeks at a time. This, combined with a downturn in business, led to a loan with B2B Financing which is an internet financer that deducted payments on a daily basis of approximately $400.00 per day, for a monthly payment in excess of $12,000.00, per month. All of these events led to a cash flow issue which resulted in the Debtor not being able to generate significant funds for payments to Komatsu and Komatsu was preparing to repossess the Harvester. The Harvester is the heart of the Debtor's business and without that piece of equipment, he is unable to operate the business. As a result, Debtor filed for protection under Chapter 11 of the Bankruptcy Code on or about May 19, 2023.

C.      *The Debtor's Assets and Liabilities.*

The Debtor's assets and liabilities are set out more fully in a liquidation analysis which is referenced in Paragraph E of these disclosures and attached hereto as Exhibit A.

D.    *Plan Summary.*

1.    *Claims and Interests.*

The Plan provides for the following Claims and Interests:

a.    Administrative Claims.

b.    Professional Fees.

c.    Secured Claim of B2B Financing.

d.    Secured Claim of Komatsu Financial Limited Partnership.

e.    Secured Claim of Lutke Equipment.

f.    General Unsecured Claims.

g.    Membership Interests.

2.    *Treatment of Claims and Interests.*

The Plan proposes to pay Allowed Administrative Claims in accordance with IV. Holders of Claims in Classes 3 through 5 should refer to Article IV for information regarding the precise treatment of their Claim. Holders of Class 6 General Unsecured Claims will receive Pro Rata distributions, which the Debtor has valued as approximately $.26 cents on the dollar. Holders of Interests shall retain their Interests in the Debtor.

The Plan Term is [five] years commencing on the Effective Date.

3.    *Means of Implementation.*

Any net proceeds which are recovered from litigation against Roland Machinery Company, will also be utilized to pay Class 2 and Class 6 creditors.

The Debtor will satisfy Allowed Claims under the Plan with Cash derived from ongoing business operations, and Cash derived from its Projected Disposable Income during the term of the Plan.

E.    *Liquidation Analysis.*

Often called the "best interests" test, sections 1129(a)(7) and 1190(1)(B) of the Bankruptcy Code require that a bankruptcy court find, as a condition to confirmation, that a 0 plan provides, with respect to reach impaired class, that each Holder of a Claim or Interest in such impaired class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting Holder would receive or retain if the debtor liquidated under chapter 7.

Attached hereto as Exhibit A and incorporated herein by reference is a liquidation analysis (the "Liquidation Analysis") prepared by the Debtor with the assistance of its advisors. As reflected in the Liquidation Analysis, the Debtor believes that liquidation of the Debtor's business under chapter 7 of the Bankruptcy Code would result in substantial diminution in the value to be realized by Holders of Claims or Interests as compared to distributions contemplated under the Plan. Consequently, the Debtor and its management believe the Confirmation of the Plan will provide a substantially greater return to Holders of Claims or Interests than would a liquidation under chapter 7 of the Bankruptcy Code.

F.      *Projections and Plan Feasibility.*

Section 1190(1)(C) of the Bankruptcy Code requires a plan filed under Subchapter V of 0 to include projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization. In addition to this requirement, section 1129(a)(11) of the Bankruptcy Code requires the bankruptcy court to find that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor of the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization). If a class of claims or interests is impaired by the plan and does not accept the plan, section 1191(b) of the Bankruptcy Code requires that the bankruptcy court to additionally find that the plan is fair and equitable, with respect such class of claims or interests as a condition to plan confirmation. To conclude that the plan is fair and equitable to each nonconsenting impaired class, the bankruptcy court must find that: (1) with respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code; (2) as of the effective date of the plan, all of the projected disposable income of the debtor to be received during the plan term, or its equivalent value, will be applied to make payments under the plan; and (3)(i) the debtor will be able to make all payments under the plan, or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan. See 11 U.S.C. § 1191(c).

To comply with section 1190(1)(C) and determine whether the Plan meets the forgoing feasibility requirements, the Debtor, has analyzed its ability to meet its obligations under the Plan. As part of this analysis, the Debtor has prepared its projected cash flows (the "Financial Projections") attached hereto as Exhibit B and incorporated herein by reference. Based on the Financial Projections, the Debtor believes that it will be a viable operation following the Bankruptcy Case and that the Plan will meet the feasibility requirements of the Bankruptcy Code.

The Debtor recognizes that his Financial Projections show an income higher than his income has been during the course of this Chapter 11 proceeding. It should be noted that his income has increased significantly on a monthly basis. The gross income in June, July and August of 2023 has increased significantly on a monthly basis and the Debtor is confident, based on its operations in October, that the Financial Projections are accurate and that funds will be sufficient to make the payments under this Plan and meet the feasibility requirement of the Bankruptcy Code.

It is important to note that the Debtor's accounts receivable at the end of October 1, 2023, is in excess of $47,000.00. They remain in that range today. Consequently, the projections which show a $48,000.00 income on a monthly basis, are realistic and will allow the Debtor to make the payments provided herein. The September 2023 Monthly Operating Report is attached hereto as Exhibit C.

| | JUNE 2023 | JULY 2023 | AUGUST 2023 | SEPTEMBER 2023 |
|---|---|---|---|---|
| **GROSS INCOME** | $17,639.04 | $20,847.66 | $22,761.59 | $34,902.54 |
| **ACCOUNTS RECEIVABLE** | $35,579.66 | $36,717.96 | $42,302.02 | $44,017.12 |

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Except for the Claims addressed in Article III of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Interests in the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Administrative Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Professional Fees | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Secured Claim of B2B Financing | Impaired | Entitled to Vote |
| Class 4 | Secured Claim of Komatsu Financial Limited Partnership | Impaired | Entitled to Vote |
| Class 5 | Secured Claim of Lutke Equipment | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Membership Interests of Debtor | Impaired | Not Entitled to Vote (Deemed to Accept) |

# ARTICLE III.
## TREATMENT OF NON-CLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article II.

A.    *Administrative Claims.*

Subject to section B of this Article, and unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

B.    *Administrative Claims under Sections 507(a)(2) and (a)(3) of the Bankruptcy Code.*

Pursuant to section 1191(e) of the Bankruptcy Code, each Holder of an Allowed Administrative Claim arising under sections 507(a)(2) and (a)(3) of the Bankruptcy Code will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

The Debtor does not believe that there are any unpaid creditors on a post-petition basis, however, to the extent they do exist and were not previously paid during the Bankruptcy Case, all requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Confirmation Date.

C.    *Professional Fee Claims.*

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Professional Fee Claims must be filed no later than thirty (30) days after the Confirmation Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the

Bankruptcy Rules, or order of the Bankruptcy Court. The Debtor shall pay Professional Fee Claims at a rate of $2,000.00 per month.

Professionals shall reasonably estimate their unpaid fees and expenses incurred in rendering services to the Debtor or, in the case of the Subchapter V Trustee, performing their obligations under section 1183 of the Bankruptcy Code, and shall file a statement of such estimated fees and expenses on the docket in the Bankruptcy Case no later than seven (7) days before the first date upon which the Confirmation Hearing is scheduled; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional.

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

A.     *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.    *Class 1 – Administrative Claim*

    a.    *Classification:* Class 1 consists of any Administrative Claims, with the exception of Professional Fees, against the Debtor. The Debtor does not believe that it has any Class 1 Administrative Claims;

    b.    *Treatment:* Each Holder of an Allowed Administrative Claim shall receive, if any, payment in full and final on the Effective Date of the Plan.

    c.    *Voting:* Class 1 is Unimpaired under the Plan. Holders of Allowed Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    *Class 2 – Professional Fees*

    a.    *Classification:* Class 2 consists of any Professional Fees.

    b.    *Treatment:* To the extent there is any recovery in the litigation against Roland Machinery Company, which cause of action is preserved herein, the net proceeds of that recovery will be paid to Class 2 Professional Fees until these claims are paid in full. The Debtor will consult with the Subchapter V Trustee to determine the amount of Professional Fees which are due and

owing in this matter. A statement with respect to the estimated Professional Fees will be filed with this Court as an additional addendum ten (10) days prior to Confirmation. These will be paid at the rate of $2,000.00 per month until paid in full.

    c.    *Voting:* Class 2 is Unimpaired under the Plan. Holders of Professional Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    *Class 3 – Secured Claim of B2B Financing*

    a.    *Classification:* Class 3 consists of the Secured Claim of B2B Financing.

    b.    *Allowance:* On the Effective Date, the Secured Claim of B2B Financing shall be Allowed in the principal amount of $72,036.70.

    c.    *Treatment:* In full and complete satisfaction, settlement, release and discharge of the Class 3 Claim, B2B Financing claim amount shall be amortized over five years at 6% interest. This will require payments by the Debtor in the amount of $1,392.07 per month. These payments will begin on the first of the month following the Effective Date of the Plan.

    d.    *Lien Retention:* B2B Financing shall retain the Lien securing the Class 3 Claim until payment in full of the Allowed Class 3 Claim.

    e.    *Voting:* Class 3 is impaired under the Plan and B2B Financing is entitled to vote to accept or reject the Plan.

4.    *Class 4 – Secured Claim of Komatsu Financial Limited Partnership*

    a.    *Classification:* Class 4 consists of the Secured Claim of Komatsu Financial Limited Partnership.

    b.    *Allowance:* On the Effective Date, the Secured Claim of Komatsu Financial Limited Partnership shall be Allowed in the principal amount of $310,000.00.

    c.    *Treatment:* In full and complete satisfaction, settlement, release and discharge of the Class 4 Claim, Komatsu Financial Limited Partnership shall be amortized over seven years at 9% interest. This will require payments by the Debtor in the amount of $4,987.61 per month. These payments will begin on the first of the month following the Effective Date of the Plan.

    d.    *Lien Retention:* Komatsu Financial Limited Partnership shall retain the Lien securing the Class 4 Claim until payment in full of the Allowed Class 4 Claim.

e.  *Voting:*  Class 4 is impaired under the Plan and Komatsu Financial Limited Partnership is entitled to vote to accept or reject the Plan.

5.  *Class 5 – Secured Claim of Lutke Equipment*

a.  *Classification:*  Class 5 consists of the Secured Claim of Lutke Equipment.

b.  *Allowance:*  Lutke Equipment has filed a secured claim in the amount of $19,958.02. The Debtor is still investigating whether this claim is accurate and reserves this right to object to the claim if the Debtor believes the amount is not correct.

c.  *Treatment:*  This will require payments by the Debtor in the amount of $358.89 monthly.  This represents an amortization of the claimed amount over five years at 6% interest. If it is determined that the amount owed is less than the claimed amount, this payment will continue in the aforementioned amount until the obligation is paid in full. These payments will begin on the first of the month following the Effective Date of the Plan.

d.  *Lien Retention:*  Lutke Equipment shall retain the Lien securing the Class 5 Claim until payment in full of the Allowed Class 5 Claim.

e.  *Voting:*  Class 5 is impaired under the Plan and Lutke Equipment is entitled to vote to accept or reject the Plan.

6.  *Class 6 – General Unsecured Claims*

a.  *Classification:*  Class 6 consists of Holders of General Unsecured Claims as listed on Exhibit D.

b.  *Treatment:*  Commencing on the end of the first quarter following the Effective Date and concluding no later than the fifth-year anniversary of the Effective Date, the Debtor shall distribute Cash to each Holder of a pro rata portion of $1,000.00 per quarter for the first twelve (12) quarters and a pro rata portion in the amount of $2,000.00 per quarter for the following eight (8) quarters of the Plan.  These creditors will receive approximately 26% of their claims. Payments will commence at the end of the first quarter following the Effective Date of the Plan. After Class 2 creditors are paid in full, to the extent there is any recovery in the litigation against Roland Machinery Company, which cause of action is preserved herein, the remaining net proceeds of that recovery will be paid to Class 6 creditors until they are paid in full.

c.  *Compliance with Section 1191(b):*  If Class 6 votes to reject the Plan, Holders of Class 6 Allowed General Unsecured Claims shall receive the treatment set forth above and shall additionally be entitled to exercise the remedies set forth in Article VIII.HH.  The Debtor submits that such treatment satisfies the requirements of section 1191(b).

d. *Voting:* Class 6 is Impaired under the Plan and Holders of General Unsecured Claims shall be entitled to vote to accept or reject the Plan.

7. <u>*Class 7 – Membership Interests*</u>

a. *Classification:* Class 7 consists of Holders of Membership Interests in the Debtor.

b. *Treatment:* On the Effective Date, each Holder shall retain their Interests in the Debtor in the same proportions that existed on the Petition Date.

c. *Voting:* Class 7 is Unimpaired under the Plan. The Holders of Interests in Class 7 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders are not entitled to vote to accept or reject the Plan.

B. *Voting Classes, Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

C. *Confirmation Pursuant to section 1191(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.A of the Plan. The Debtor shall seek Confirmation of the Plan pursuant to section 1191(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan in accordance with Article XI of the Plan to the extent, if any, that Confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

D. *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE V.
## PRESERVATION OF CAUSES OF ACTION

The Debtor preserves and intends to pursue a cause of action against Roland Machinery Company. Roland Machinery Company completed repairs on the equipment and the repairs were faulty, causing the main gear box of the Komatsu equipment to fail and causing significant damage. The damage caused by Roland Machinery Company in their faulty repairs resulted in a total down time of the equipment of between four and six months. Debtor preserves this cause of

action against Roland Machinery Company and intends to pursue it with any net recovery against Roland Machinery Company to Class 2 and Class 6 creditors in this matter in order of priority.

## ARTICLE VI.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

A.    *Disputed Claims Process.*

The Debtor shall retain the right to file an objection to any Proof of Claim that has been filed in this case within thirty (30) days of the Effective Date of the Plan.

Except as otherwise provided herein, all Proofs of Claim filed after the Proof of Claim Bar Date or Governmental Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, without the need for any objection by the Debtor or the Subchapter V Trustee, or any further notice to, or action, order or approval of the Bankruptcy Court.  For the avoidance of doubt, on and after the Effective Date, the Debtor may negotiate and settle any Claims, including Claims for which a Proof of Claim has been filed, without further notice to or approval of the Bankruptcy Court or any other party.

B.    *Prosecution of Objections to Claims.*

Any objections to Claims or Interests shall be served and filed on or before the 30th day after the Effective Date or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Holder (the "Claims Objection Deadline").

## ARTICLE VII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor does not believe it has any executory contracts, however, to the extent the Debtor's insurance policies are deemed to be executory contracts, the following provisions shall apply.

A.    *Insurance Policies.*

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Debtor.

B.    *Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have thirty (30) days following entry of a Final Order such dispute to alter its treatment of such contract or lease under the Plan.

14

# ARTICLE VIII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Global Settlement of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, release, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtor and the Estate. Subject to Article VIII hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction describe in, approved by, contemplated by, or necessary to effectuate the Plan.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

B.      *Confirmation of the Plan under Section 1191(b).*

The Debtor requests that the Bankruptcy Court enter the confirm the Plan under section 1191(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

C.      *Vesting of Assets in the Debtor.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in the Estate, Cause of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

*D.     Management of the Business.*

Except as provided in any agreement approved by the Bankruptcy Court, Todd Porter, Sole Member, shall operate and manage the business of the Debtor after the Effective Date. Todd Porter is an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code. In exchange for his services as Sole Member, Todd Porter will receive $24,000.00 in annual compensation from the Debtor payable monthly in the amount of $2,000.00.

*E.     Sources of Consideration for Plan Distributions.*

The Debtor shall use Cash on hand, working capital, and Cash from ongoing business operations to fund distributions to certain Holders of Allowed Claims, consistent with the terms of the Plan. Pursuant to section 1190(2) of the Bankruptcy Code, the Plan provides for the submission of all or such portion of the future earnings of the Debtor as is necessary for the execution of the Plan.

*F.     Delivery of Distributions.*

1.     *Disbursing Agent.*

Notwithstanding sections 1191(b) and 1194 of the Bankruptcy Code, the Debtor and not the Subchapter V Trustee shall act as the Disbursing Agent under the Plan.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursements claim (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Debtor.

2.     *Delivery of Distributions.*

Unless otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's record as of the date of any such distribution; *provided* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

3. _Time Bar to Negotiate Distribution Checks._

Holders of Allowed Claims shall have ninety (90) days from the date of issuance of a distribution to negotiate a check issued by the Disbursing Agent. If a Holder fails to negotiate a disbursement check within ninety (90) days, the Disbursing Agent shall have the right to void the check, and any current and/or future claims of such Holder shall be treated as Unclaimed Distributions (defined below).

4. _Undeliverable Distributions._

If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Debtor and the Disbursing Agent shall be authorized to treat such Holder's current and future distribution on account of its Allowed Claim as Unclaimed Distributions (defined below).

The Disbursing Agent shall have no obligation to make more than two (2) attempts to obtain the Holder's current address. Any distribution that remains undeliverable after six (6) months of the date the distribution was first attempted shall become an Unclaimed Distribution (defined below).

5. _Unclaimed Distributions; Reversion._

Any distribution made by the Disbursing Agent to a Holder of an Allowed Claim that is undeliverable for more than six (6) months or has not been negotiated within ninety (90) days from the date of issuance of the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall revest with the Debtor. Upon such revesting, (i) the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary, and (ii) such Holder shall not be entitled to receive any further distributions on account the Allowed Claim relating to such Unclaimed Distribution.

G. _Modification of the Plan._

The Debtor may modify the Plan subject to the requirements and limitations of section 1193 of the Bankruptcy Code. Consistent with Article VIII.B, the Debtor may modify the Plan to the extent that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

The Debtor may, without notice to Holders of Claims or Interests, insofar as it does not materially or adversely affect the interests of any such Holders, correct any defect of omission in the Plan and any schedule or exhibit to the Plan.

*H.      Default under the Plan; Appropriate Remedies.*

If the Plan has been confirmed under section 1191(a) of the Bankruptcy Code and the Debtor fails to timely perform its obligations under the Plan with respect to one or more Holders Allowed Claims then, notwithstanding the injunction set forth in Article IX.CC, such Holders shall be entitled to pursue any rights and remedies that such Holders may have under applicable law, including but not limited to foreclosure of Liens, and bringing an action against the Debtor for breaching its obligations under the Plan and seeking monetary and/or injunctive relief; provided that the Debtor shall have ninety (90) days to cure any default with respect to its obligations to [Class 7] before any Holders of Allowed Claims in such Class may be allow to pursue any rights or remedies that such Holders may have under applicable law.

In addition to the foregoing, if the Plan has been confirmed under section 1191(b) of the Bankruptcy Code, and the Debtor fails to timely perform its obligations under the Plan with respect to one or more Impaired Classes that has not accepted the Plan, then: (i) the Debtor shall have ninety (90) days to cure any default with respect to such Impaired Classes; (ii) if the Debtor is unable to cure such default, it shall, no later than forty-five (45) days from the expiration of the time allotted in clause (i), file a modified plan supported by a revised projected disposable income analysis, which plan shall propose treatment of the Impaired Classes consistent with section 1191; and (iii) the Debtor shall move for the Bankruptcy Court to approve the Plan, as modified, after notice and a hearing.  If the Debtor fails to comply with this paragraph after failing to perform its obligations under the Plan with respect to one or more Impaired Classes or fails to obtain a Final Order approving modifications to the Plan that are sufficient to ensure that Holders of Allowed Claims in each Impaired Class are not discriminated against unfairly and receive fair and equitable treatment, then any party in interest may move to convert the Bankruptcy Case to one under chapter 7, and the Debtor shall not oppose such motion.

*I.      Termination of Subchapter V Trustee Service.*

If the Plan is confirmed pursuant to section 1191(a) of the Bankruptcy Code, the Subchapter V Trustee's service in the Bankruptcy Case shall terminate once the Plan has been substantially consummated (as defined by section 1101(2) of the Bankruptcy Code), or the Bankruptcy Case is dismissed or converted to another chapter of the Bankruptcy Code.  No later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file and serve a notice of such substantial consummation pursuant to 1183(c)(2), which shall be sufficient proof of the termination of the Subchapter V Trustee's services.

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Subchapter V Trustee's service in the Bankruptcy Case shall terminate upon the entry of a final decree closing the Bankruptcy Case, or upon the dismissal or conversion of the Bankruptcy Case to another chapter of the Bankruptcy Code.

*J.      Case Closure.*

If the Plan is confirmed pursuant to section 1191(a), upon substantial consummation of the Plan, the Debtor shall file: (i) the notice required under section 1183(c)(2); and (ii) a motion for entry of final decree closing the Bankruptcy Case pursuant to Bankruptcy Rule 3022.

If the Plan is confirmed pursuant to section 1191(b), upon completion of all payments due under the Plan to Holders of Claims in Classes 2, the Debtor shall file a motion for entry of final decree closing the Bankruptcy Case pursuant to Bankruptcy Rule 3022. The Subchapter V Trustee's service shall terminate upon the entry of the final decree.

# ARTICLE IX.
# DISCHARGE OF CLAIMS AND RELEASE

A. *Discharge.*

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of the Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code. The Debtor will not be discharged from any debt imposed by the Plan or to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to section 1141(d)(A) of the Bankruptcy Code and all Administrative Claims upon completion of all payments due during the Plan Term and the Bankruptcy Court's entry of an order of discharge pursuant to section 1192 of the Bankruptcy Code; *provided* that the order of discharge shall not apply to any debt for which the last payment is due after the Plan Term has completed.

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to section 1141(d)(A) of the Bankruptcy Code and all Administrative Claims upon completion of all payments due during the Plan Term and the Bankruptcy Court's entry of an order of discharge pursuant to section 1192 of the Bankruptcy Code; provided that the order of discharge shall not apply to any debt: (i) for which the last payment is due after the Plan Term has completed; or (ii) that is excepted from discharge pursuant to section 523(a) of the Bankruptcy Code, except as provided in Bankruptcy Rule 4007(c).]

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to section 1141(d)(A) of the Bankruptcy Code and all Administrative Claims, upon completion of all payments due during the Plan Term and the Bankruptcy Court's entry of an order of discharge pursuant to section 1192 of the Bankruptcy Code; provided that the order of discharge shall not apply to any debt: (i) for which the last payment is due after the Plan Term has completed, or as otherwise provided in section 1192; or (ii) that is excepted from discharge pursuant to section 523(a) of the Bankruptcy Code, except as provided in Bankruptcy Rule 4007(c).]

B. *Release.*

Upon entry of the order of discharge, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan: (i) each Holder of a Claim that votes to accept the Plan; and (ii) to the fullest extent permissible under applicable law, each Entity that has held, holds, or may hold a Claim or at any time was a creditor of the Debtor and

that does not vote on the Plan or votes to reject the Plan, in each case will be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, rights, Causes of Action, and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan that such Entity has, had or may have against the Debtor, the Estate, and the Debtor's assets.

C.    *Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor or the Exculpated Parties, or their respective property or assets on account of or in connection with or with respect to such Claims; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Exculpated Parties, or their respective property or assets on account of or in connection with or with respect to such Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor the Exculpated Parties, or their respective property or assets on account of or in connection with or with respect to such Claims unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date; and (5) commencing or continuing in any manner any actions or other proceeding of any kind on account of or in connection with or with respect to any such Claim released or settled pursuant to the Plan.

**ARTICLE X.**
**GENERAL PROVISIONS**

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    **"Administrative Claim"** means a Claim for costs and expenses of administration of the Estate under section 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the business of the Debtor; and (b) Allowed Professional Fee Claims.

2.    **"Allowed"** means, as to a Claim or Interest, proof of which was timely and properly filed or, if no proof of Claim or Interest was filed, which has been or hereafter is listed in the Schedules, as liquidated in an amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (b) an objection has been

interposed and such Claim or Interest has been allowed, in whole or in part, by a Final Order and/or by the agreement of the holder of such Claim or Interest. With respect to an Administrative Claim, "Allowed" shall mean any Administrative Claim, or any portion thereof, with respect to which both (a) a timely and proper request for payment has been made to the extent required by the Plan, the Confirmation Order, or by any other order of the Bankruptcy Court, and (b) such Administrative Claim is allowed by the Bankruptcy Court. Allowed Claims shall not include Disputed Claims or Disallowed Claims.

3.     **"Ballot"** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject the Plan.

4.     **"Bankruptcy Case"** means the Debtor's bankruptcy case pending in the Bankruptcy Court, Case No. 23-20563.

5.     **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532.

6.     **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Massachusetts.

7.     **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated under section 2075 of title of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court.

8.     **"Proof of Claim Bar Date"** means September 20, 2023, the deadline for Holders of Claims (other than Governmental Units) to file a Proof of Claim against the Estate in the Bankruptcy Case.

9.     **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

10.    **"Cash"** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

11.    **"Cause of Action"** means any action, claim, cross-claim, third-party claim, cause of action, chose in action, controversy, dispute, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foresee or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

12.    **"Claim"** means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

13.    **"Class"** means a class of Claims or Interests as set forth in Article IV hereof pursuant to section 1122(a) of the Bankruptcy Code.

21

14.     **"Confirmation"** means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Bankruptcy Case.

15.     **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

16.     **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1191 of the Bankruptcy Code, as such hearing may be continued from time to time.

17.     **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1191 of the Bankruptcy Code, together with any supplementary exhibits, appendices, and related documents.

18.     **"Cure"** means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's default under an Executory Contract or an Unexpired Lease assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

19.     **"Debtor"** has the meaning set forth in the preamble to the Plan and shall include the reorganized Debtor after the Effective Date of the Plan, as applicable.

20.     **"Disallowed"** means as to a Claim, or any portion thereof, that: (a) has been disallowed or expunged by a Final Order; (b) has been listed by the Debtor in the Schedules in the amount of "$0.00" or as unliquidated in amount, disputed, contingent, or unknown and for which no Proof of Claim has been filed prior to the applicable deadline; or (c) unless otherwise specified herein or by Final Order, any interest, fees, and charges, and any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or any other claims or obligations that do not compensate for actual losses.

21.     **"Disbursing Agent"** means, as applicable, the Debtor or any Entity the Debtor selects to make or to facilitate distributions in accordance with the Plan.

22.     **"Disposable Income"** shall have the meaning set forth in section 1191(d) of the Bankruptcy Code.

23.     **"Disputed"** means as to a Claim, or any portion thereof, that: (a) is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order; (d) if held by an Entity that is a defendant in a pending Avoidance Action, or has failed to pay or turn over property as required by section 502(d) of the Bankruptcy Code; or (e) is otherwise disputed by the Debtor or the Subchapter V Trustee after the Effective Date, in accordance with applicable law.

24.     **"Exculpated Parties"** means, collectively, and in each case in its capacity as such: (i) the Debtor; (ii) the Subchapter V Trustee; (iii) the Disbursing Agent; (iv) any statutory committee appointed in the Bankruptcy Case; and (v) each current and former director, manager, officer, member, equity holder, predecessor, assignor, participant, successor, assign, subsidiaries, affiliate, partner, limited partner, general partner, employee, agent, trustee, advisory board member, financial advisor, attorney, accountant, consultant, representative, and other professional and advisor with respect to clauses (i) through (iv).

25.     **"Effective Date"** means the date that is the first Business Day: (i) following the date that is fourteen (14) days after the Confirmation Date; or (ii) if a stay of the Confirmation Order is in effect, the first Business Day after the date on which the stay of the Confirmation Order expires or is otherwise terminated. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

26.     **"Entity"** means any entity, as defined in section 101(15) of the Bankruptcy Code.

27.     **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to sections 541 and 1186 of the Bankruptcy Code.

28.     **"Executory Contract"** means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

29.     **"Final Decree"** means the decree contemplated pursuant to Bankruptcy Rule 3022.

30.     **"Final Order"** means an order of judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal, seek certiorari, or move for a new trial, stay, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending; or (b) if any appeal, certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule, may be filed relating to such order or judgment, shall not cause such order or judgment not to be a Final Order.

31.     **"General Unsecured Claim"** means any Claim that is not (a) an Administrative Claim, (b) a Professional Fee Claim, or (c) a Claim under Classes 2 through 5.

32.     **"Government Bar Date"** means December 19, 2023, the deadline for a Governmental Unit to file a Proof of Claim against the Estate in the Bankruptcy Case.

33.     **"Governmental Unit"** means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

34.     **"Impaired"** means, with respect to any Class of Claims or Interests, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

35. **"Interests"** means any equity or membership interest in the Debtor, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, any other right to purchase or otherwise receive any ownership interest in the Debtor, or other interest or related right to payment or compensation based upon such interest, existing on or before the Effective Date.

36. **"Lien"** means a lien as defined in section 101(37) of the Bankruptcy Code.

37. **"Liquidation Analysis"** shall have the meaning set forth in Article I.D.E. The Debtor's Liquidation Analysis is attached to the Plan as Exhibit A.

38. **"Person"** has the meaning set forth in section 101(14) of the Bankruptcy Code.

39. **"Petition Date"** means the date on which the Debtor commenced the Bankruptcy Case.

40. **"Plan"** means this plan of reorganization, including all exhibits, supplements, appendices, and schedules, in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

41. **"Plan Term"** means the duration of time from the Effective Date through the [third] anniversary of the Effective Date.

42. **"Pro Rata"** means, unless otherwise specified, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

43. **"Proof of Claim"** means a proof of Claim filed against the Debtor in the Bankruptcy Case.

44. **"Professional"** means: (a) an Entity employed pursuant to sections 327, 363, or 1103 of the Bankruptcy Code; (b) the Subchapter V Trustee; and (c) an Entity awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

45. **"Professional Fee Claim"** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, and 503(b) of the Bankruptcy Code.

46. **"Projected Disposable Income"** shall have the meaning set forth in Article I.EF.

47. **"Reinstate"** means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

48. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be supplemented or amended from time to time.

49.  **"Secured Claim"** means any Claim that is secured by a valid, perfected and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

50.  **"Solicitation"** means that solicitation of votes in connection with the Plan pursuant to section 1126 of the Bankruptcy Code.

51.  **"Solicitation Procedures Order"** means the order entered by the Bankruptcy Code setting the date for the Confirmation Hearing, and establishing deadlines for submitting Ballots, objecting to the Plan and the proposed assumption of Executory Contracts and Unexpired Leases, among other relief.

52.  **"Subchapter V Trustee"** shall refer to Kimberly Clayson, appointed pursuant to section 1183(a) of the Bankruptcy Code in the Bankruptcy Case.

53.  **"Unclaimed Distribution"** shall have the meaning provided in Article VIII.E.

54.  **"Unexpired Lease"** means a lease to which the Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

55.  **"Unimpaired"** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

56.  **"Voting Deadline"** means the deadline for submitting Ballots established in the Solicitation Procedures Order.

*B.*     *Rules of Interpretation.*

For the purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) any immaterial effectuating provisions may be interpreted by the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the

Bankruptcy Court or any other Entity; and (10) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## ARTICLE XI.
## OTHER PROVISIONS

A.      *Confirmation Hearing and Objection Deadline.*

The Bankruptcy Court will schedule the Confirmation Hearing to consider whether the Plan satisfies the various requirements of the Bankruptcy Code and Bankruptcy Rules. Any objection to the Plan shall be filed by the objection deadline set forth in the Solicitation Procedures Order.

B.      *Acceptance and Rejection of Plan.*

The Debtor shall provide all Holders of Allowed Claims in an Impaired Class with a Ballot. Such Holders may vote to accept or reject the Plan by completing, dating, signing and causing to the Ballot to be returned to the Debtor's counsel by the voting deadline set forth in the Solicitation Procedures Order.

Pursuant to section 1126 of the Bankruptcy Code, an Impaired Class shall have accepted the Plan if (i) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan, and (ii) the Holders of more than one-half (1/2) in number of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan (in both instances, acceptance or rejection by such Holders shall be made in good faith). If necessary and applicable for Confirmation of the Plan, the Debtor reserves the right to request that the Bankruptcy Court address whether the Plan may be deemed accepted or rejected by any Impaired Class for which no Holder has returned a Ballot voting to accept or reject the Plan.

C.      *Nonconsensual Confirmation.*

The Bankruptcy Court shall confirm the Plan under section 1191(a) of the Bankruptcy Code if all of the requirements of section 1129(a) of the Bankruptcy Code are met, including, among other things making a finding that all Impaired Classes have voted to accept the Plan.

If one or more Impaired Class votes to reject the Plan, the Bankruptcy Court shall confirm the Plan upon a finding that the Debtor has satisfied the requirements of section 1191(b) with respect to each rejecting Impaired Class.

*D.*     *Immediate Binding Effect.*

Upon the occurrence of the Effective Date, the terms of the Plan, and any documents supplemental to the Plan, shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

*E.*     *Retention of Jurisdiction.*

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising out of, and related to, the Plan, the Confirmation Order, and the Bankruptcy Case to the fullest extent permitted by law, including but not limited to: (i) determining the allowance of compensation and expenses of Professionals; (ii) hearing and deciding any and all adversary proceedings, applications, and contested matters; (iii) determining issues or disputes relating to the assumption of Executory Contracts and Unexpired Leases and any claims related thereto; (iv) determining disputes as to classification or allowance of Claims or Interests; (v) resolving any dispute between or among any of the parties to the Bankruptcy Case; (vi) ruling on any modification of the Plan proposed under section 1193; (vii) determining other such matters as may be set forth in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; (viii) entering a final decree closing the Bankruptcy Case; (ix) correcting any defect, cure any omission or reconciling any inconsistency in this Plan or Confirmation Order; and (x) issuing such orders or injunctions as may be necessary to execute, implement, or consummate the Plan, or taking such other actions as may be necessary to restrain interference by any Entity with consummation or enforcement of the Plan.

*F.*     *Entire Agreement and Non-severability.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtor or, prior to the termination of his services, the Subchapter V Trustee's consent; and (ii) non-severable and mutually dependent.

*G.*     *Effect of Non-occurrence of Effective Date.*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgment, offer or undertaking by the Debtor.

*H.*     *Governing Law.*

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without giving effect to conflict-of-laws principles.

*I.*     *Tax Consequences.*

The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto. There can be no assurance that the Internal Revenue Service or any state or local taxing authorities will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

FOR THE FOREGOING REASONS, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE, AND LOCAL) TO THEM OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR EQUITY HOLDER, NOR IS THE DEBTOR RENDERING ANY FORM OR LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.

*J.*     *Reservation of Rights.*

The Debtor reserves the right to, among other things: (i) contest the right of the Holder of any Claim to vote on the Plan, or designate the vote of the Holder of any Claim; (ii) contest the right of the Holder of any Claim to receive distributions under the Plan; (iii) contest the validity of a creditor's Lien or security interest; (iv) seek to subordinate any Claim for inequitable conduct or otherwise; and (v) to pre-pay all or a portion of an Allowed Claim. Except as otherwise provided, no assets shall be deemed abandoned and no defense, set-off, counterclaim, or right of recoupment of the Debtor shall be deemed waived, released, or compromised.

*K.*     *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor, or any other Entity, if such agreement was not disclosed in the Plan, any documents supplementary to the Plan prior to the Confirmation Date.

*L.*      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, success or assign, affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.


PORTER'S PENINSULA LOGGING, LLC

Dated: October 31, 2023

By: */s/* Todd Porter_____
     Name: Todd Porter
     Title: Sole Member


WARNER NORCROSS & JUDD LLP

Dated:  October 31, 2023.       By:

      /s/ Rozanne M. Giunta_____
     ROZANNE M. GIUNTA (P29969)
     Attorneys for Debtor
     715 E. Main Street, Suite 110
     Midland, Michigan 48640
     (989) 698-3758
     rgiunta@wnj.com

| ASSETS: | VALUE | LIENS | AMOUNT OF LIEN | EQUITY |
|---|---|---|---|---|
| | | | | |
| Cash on Hand | $7,000.00 | N/A | $0.00 | $7,000.00 |
| Accounts Receivable | $47,000.00 | B2B Financing | $71,900.00 | $0.00 |
| Inventory | $10,000.00 | B2B Financing | $24,900.00 | $0.00 |
| Office Furniture | $260.74 | N/A | $0.00 | $260.74 |
| Equipment: | | | | |
| 2021 Komatsu XT430-5 | $310,000.00 | Komatsu Financial | $310,000.00 | $0.00 |
| 1999 Bison S15 Forwarder | $25,000.00 | Lutke Equipment | $9,058.00 | $0.00 |
| | | B2B Financing | $5,042.00 | $0.00 |
| 2018 Rolly Harvester | $50,000.00 | B2B Financing | $19,858.00 | $30,142.00 |
| 2000 International Paystar 5000 | $21,000.00 | | | $21,000.00 |
| Cause of action/claim against Roland | | | | |
| Machinery Company | Recovery unknown | | | unknown |
| | | | | |
| **Equity Available for Distribution*:** | | | | **$58,402.74** |
| | | | | |
| LIABILITIES: | | | | |
| | | | | |
| Professional Fees (Estimate) | $50,000.00 | | | |
| Amount Available to Unsecured Creditors | $8,402.74 | | | |
| Unsecured Debt: | | | | |
| Accounts Payable | $121,911.53 | | | |
| | | | | |
| | | | **Value for distribution** | |
| | | | **to unsecured creditors** | **$8,402.74** |
| | | | | |
| *This amount does not take into consideration any costs | | | | |
| of liquidation, reserve for bad debt on accounts | | | | |
| receivable or future Trustee's fees | | | | |

<u>**EXHIBIT B**</u>

<u>**PORTER'S PENINSULA LOGGING, LLC**</u>

<u>**MONTHLY PROJECTIONS**</u>

| <u>**Expenses:**</u> | <u>**Amount:**</u> |
|---|---|
| Diesel – off road for equipment | $ 3,100.00 |
| Diesel – on road for semi | $ 2,000.00 |
| Truck gas | $ 1,500.00 |
| Repairs, maintenance of equipment, trucks and semi | $ 2,500.00 |
| Payroll 1099 contract employees (2) | $ 4,000.00 |
| Personal wage draw | $ 2,000.00 |
| Outsourcing such as snowplowing and excavating | $     50.00 |
| Trucking for moving equipment | $ 3,500.00 |
| Tools | $    100.00 |
| Phone/Wifi | $    300.00 |
| Oils, lube, grease and def. | $ 2,500.00 |
| Stumpage | $14,400.00 |
| <u>Insurance</u>: | |
| Bonds | $      80.00 |
| Truck | $    216.00 |
| Semi | $    364.00 |
| Forwarder | $    212.50 |
| Processor | $    718.26 |
| Liability | $      60.38 |
| | ======== |
| **Total** | **$37,601.14** |

| <u>**Projected funds available:**</u> | **$10,398.86** |
|---|---|

EXHIBIT C

B25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

In re:

Porter's Peninsula Logging LLC

    Debtor.

Case Number: 23-20563-dob

Subchapter V Chapter 11

Hon. Daniel S. Opperman

## SMALL BUSINESS MONTHLY OPERATING REPORT

Month: **September 2023**   Date Filed: **May 19, 2023**

Line of Business: **Logging**   NAICS Code: **113310**

**IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.**

RESPONSIBLE PARTY:

_Todd Porter_
Original Signature of Responsible Party

_Todd Porter_
Printed Name of Responsible Party:

**Questionnaire: (All questions to be answered on behalf of the debtor.)**

1. Is the business still operating?    Yes _X_ No ____

2. Have you paid all your bills on time this month?    Yes _X_ No ____

3. Did you pay your employees on time?    Yes _X_ No ____

4. Have you deposited all the receipts for your business into the DIP account this month?    Yes _X_ No ____

5. Have you filed all of your tax returns and paid all of your taxes this month? **N/A**    Yes ____ No ____

6. Have you timely filed all other required government filings?    Yes _X_ No ____

7. Have you paid all of your insurance premiums this month?    Yes _X_ No ____

8.  Do you plan to continue to operate the business next month?  Yes _X_ No _____

9.  Are you current on your quarterly fee payment to the U.S. Trustee?  _None_  Yes _____ No _____

10. Have you paid anything to your attorney or other professionals this month?  Yes _____ No _X_

11. Did you have any unusual or significant unanticipated expenses this month?  _Repairs_  Yes _X_ No _____

12. Has the business sold any goods or provided services or transferred any assets to any business related to the DIP in any way?  Yes _____ No _X_

13. Do you have any bank accounts open other than the DIP account?  Yes _____ No _X_

14. Have you sold any assets other than inventory this month?  Yes _____ No _X_

15. Did any insurance company cancel your policy this month?  Yes _____ No _X_

16. Have you borrowed money from anyone this month?  Yes _____ No _X_

17. Have you paid any bills you owed before you filed bankruptcy?  Yes _X_ No _____  _B2B_

## TAXES

Do you have any past due tax returns or past due post-petition tax obligations?  _N/A_  Yes _____ No _____

If yes, please provide a written explanation including when such returns will be filed, or when such payments will be made and the source of the funds for the payment.

*(Exhibit A)*

## INCOME

Please separately list all of the income you received for the month. The list should include all income from cash and credit transactions. *(The U.S. Trustee may waive this requirement.)*

TOTAL INCOME $ _34902.54_

## SUMMARY OF CASH ON HAND

Cash on Hand at Start of Month.................................................................................. $ _1127.90_
Cash on Hand at End of Month.................................................................................... $ _4952.91_
PLEASE PROVIDE THE TOTAL AMOUNT OF CASH
CURRENTLY AVAILABLE TO YOU ......................................................... TOTAL $ _4952.91_

*(Exhibit B)*

## EXPENSES

Please separately list all expenses paid by cash or by check from your bank accounts this month. Include the date paid, who was paid the money, the purpose and the amount. *(The U.S. Trustee may waive this requirement.)*

TOTAL EXPENSES $ *31077.53*

*(Exhibit C)*

## CASH PROFIT

Income for the month (total from Exhibit B)..................................................... $ *34902.54*
Expenses for the month (total from Exhibit C)..................................................... $ *31077.53*

*(Subtract line C from line B)*    CASH PROFIT FOR THE MONTH ................... $ *3825.01*

## UNPAID BILLS

Please attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. The list must include the date the debt was incurred, who is owed the money, the purpose of the debt and when the debt is due. *(The U.S. Trustee may waive this requirement.)*

................................................................................................... TOTAL PAYABLES $ *—0—*

*(Exhibit D)*

## MONEY OWED TO YOU

Please attach a list of all amounts owed to you by your customers for work you have done or the merchandise you have sold. You should include who owes you money, how much is owed and when is payment due. *(The U.S. Trustee may waive this requirement.)*

................................................................................................... TOTAL RECEIVABLES $ *44017.12*

*(Exhibit E)*

## BANKING INFORMATION

Please attach a copy of your latest bank statement for every account you have as of the date of this financial report or had during the period covered by this report.

*(Exhibit F)*

## EMPLOYEES

Number of employees when the case was filed?

Number of employees as of the date of this monthly report? _1099 Contract_ ___1___

## PROFESSIONAL FEES

### *BANKRUPTCY RELATED:*
Professional fees relating to the bankruptcy case paid during
this reporting period? .......................................................................................... $ _—0—_

Total professional fees relating to the bankruptcy case paid
since the filing of the case? ................................................................................. $ _—0—_

### *NON-BANKRUPTCY RELATED:*
Professional fees paid not relating to the bankruptcy case paid
during this reporting period? ............................................................................... $ _—0—_

Total professional fees paid not relating to the bankruptcy case
paid during this reporting period? ....................................................................... $ _—0—_

## PROJECTIONS

Compare your actual income and expenses to the projections for the first 180 days of your case provided
at the initial debtor interview.

|  | Projected | Actual | Difference |
|---|---|---|---|
| INCOME | $ 38500.00 | $ 34902.54 | $ -3597.46 |
| EXPENSES | $ 35600.00 | $ 31077.53 | $ 4522.47 |
| CASH PROFIT | $ 2900.00 | $ 3825.01 | $ 925.01 |

TOTAL PROJECTED INCOME FOR THE NEXT MONTH: .......................................... $ _35000.00_

TOTAL PROJECTED EXPENSES FOR THE NEXT MONTH: ...................................... $ _30000.00_

TOTAL PROJECTED CASH PROFIT FOR THE NEXT MONTH: ................................. $ _5000.00_

## ADDITIONAL INFORMATION

**PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT AND
BALANCE SHEET WHICH YOU PREPARE INTERNALLY.**

Porter's Peninsula Logging LLC   September 2023   Payroll Account

| Disbursements | | Date | Amount |
|---|---|---|---|
| CK 104 | Michael Lube | 9/7 | - 996.00 |
| CK 105 | Michael Lube | 9/13 | 1089.00 |
| CK 106 | Michael Lube | 9/20 | 814.00 |
| CK 107 | Michael Lube | 9/27 | 870.00 |
| Service Charge | | | 5.00 |
| | | Total | 3774.00 |

CK 103 VOID

| Deposits | Date | Amount |
|---|---|---|
| Transfer from Business Checking | 9/13 | 1200.00 |
| Transfer from Business Checking | 9/15 | 850.00 |
| Transfer from Business Checking | 9/22 | 770.00 |
| | Total | 2820.00 |

Porter's Peninsula Logging, LLC    September 2023

| Disbursements | Date | Amount |
|---|---|---|
| Walmart - heater for Processor | 9/1 | 59.52 |
| Indian River EZ Way, truck gas | 9/1 | 35.00 |
| Chatters BP, Truck gas | 9/1 | 64.00 |
| Ponsse, Part forwarder | 9/5 | 209.34 |
| Chatter BP. Truck gas | 9/5 | 64.00 |
| Tractor Supply, Pressure Washer | 9/5 | 489.98 |
| Chatters BP, Truck gas | 9/5 | 64.69 |
| Net Fly, personal | 9/6 | 9.99 |
| Chatters BP, Diesel and Truck gas | 9/6 | 406.68 |
| Chatters BP, Diesel | 9/7 | 361.00 |
| Premco Ins Liability | 9/7 | 174.64 |
| Premco Ins Processor and Skidder | 9/7 | 684.06 |
| AM Forestry - Processor Bar | 9/8 | 276.69 |
| Bond Exchange DNR Bond | 9/8 | 100.00 |
| Bond Exchange DNR Bond | 9/8 | 100.00 |
| Walmart, Switch for Semi | 9/11 | 27.53 |
| Fairview BP, Antifreeze Semi | 9/11 | 30.72 |
| BP, St Ignace - gas. Car to Lumbermen Expo | 9/11 | 64.79 |
| Freddie's · Gas | 9/11 | 68.00 |
| Chatters BP Diesel | 9/11 | 373.19 |
| BP Hillman, Diesel & truck gas | 9/11 | 360.00 |
| Murphy Oil gas truck | 9/11 | 78.00 |
| Murphy Oil gas truck | 9/11 | 77.00 |
| Frontier Truck Parts, Semi repair | 9/12 | 407.00 |
| Exxon, gas truck - to go get Skidder part | 9/12 | 30.00 |
| Federal Fluid Skidder parts | 9/12 | 18.90 |
| Wilbur Auto Part Semi | 9/12 | 78.42 |
| Indian River Carquest, Parts Semi | 9/12 | 16.43 |

PPL                                          September 2023

| Desbursements | Date | Amount |
|---|---|---|
| Chatters BP Truck gas | 9/12 | 56.00 |
| McKenworth, Hose Semi | 9/13 | 45.29 |
| Northern Energy - Oils | 9/13 | 150.00 |
| Transfer to payroll | 9/13 | 1200.00 |
| Chatters BP Truck gas and Diesel | 9/14 | 665.17 |
| Shell Station Truck gas | 9/14 | 80.01 |
| Chatters BP Truck gas | 9/14 | 63.00 |
| Transfer to payroll | 9/15 | 850.00 |
| Chatters BP Truck gas and Diesel | 9/18 | 340.24 |
| Chatters BP Diesel | 9/18 | 255.00 |
| Chatters BP Diesel | 9/18 | 667.00 |
| Chatters BP Truck gas | 9/18 | 51.00 |
| Murphey Oil Truck gas | 9/18 | 28.00 |
| Beacon and Bridge Truck gas | 9/19 | 43.00 |
| Scientific Brake, Airbag Semi | 9/19 | 177.57 |
| Hillman BP Truck gas and Diesel | 9/19 | 1035.79 |
| Freddie's Truck gas | 9/19 | 71.00 |
| A&S Rental, Moved Processor | 9/20 | 787.50 |
| M-46 AZO - Truck gas | 9/20 | 75.00 |
| Beacon and Bridge, Truck gas | 9/20 | 46.00 |
| Pioneer State, Ins truck | 9/20 | 215.99 |
| Cummins, Processor Parts | 9/21 | 1586.41 |
| Pomps Tire, Fix Skidder tire | 9/21 | 326.35 |
| Freddies Truck gas | 9/21 | 53.01 |
| Freddies Diesel | 9/21 | 100.00 |
| Kenworth, DEF System Processor | 9/22 | 88.90 |
| A&S Rental, Move Skidder | 9/22 | 590.63 |
| Chatters BP, Truck gas and Diesel | 9/22 | 555.96 |

| Disbursements | Date | Amount |
|---|---|---|
| Transfer to payroll | 9/22 | 770.00 |
| Chatters BP, Truck gas | 9/22 | 61.00 |
| Dollar General, Supplies for away from home | 9/25 | 227.26 |
| Chatters BP, Diesel | 9/25 | 714.39 |
| Chatters BP, Truck gas | 9/25 | 75.29 |
| Chatters BP, Truck gas | 9/25 | 61.00 |
| Fasteral, Skidder screws | 9/26 | 3.71 |
| Grand Traverse Rubber Hoses | 9/27 | 311.06 |
| Freightliner, Parts Semi | 9/27 | 185.66 |
| Scientific Brake, Crib trailer lift | 9/28 | 47.70 |
| QCS Fleet Service tires Semi | 9/28 | 747.50 |
| Shell Station - Gas Truck | 9/28 | 53.00 |
| Beacon and Bridge Truck gas | 9/28 | 25.00 |
| Marathon, Diesel | 9/29 | 240.99 |
| Arts Auto Parts Semi | 9/29 | 13.06 |
| Northern Energy, Oils & fluids | 9/29 | 1357.15 |
| Grand Traverse Rubber | 9/29 | 112.17 |
| Chatters BP, Truck gas and Diesel | 9/29 | 1014.00 |
| Freddie's Truck gas | 9/29 | 62.00 |
| Ck 1501 B2B | 9/27 | 500.00 |
| CK 1502 State of Mich - Stumpage | 9/12 | 1437.18 |
| CK 1503 State of Mich - Stumpage | 9/12 | 1061.00 |
| CK 1504 State of Mich - Stumpage | 9/20 | 6276.89 |
| CK 1505 KND Trucking - Hauling logs | 9/22 | 709.18 |
| Service Charges | | 87.85 |
| Total | | 31077.53 |

Porter's Peninsula Logging LLC    September 2023

| Income | Date | Amount |
|---|---|---|
| Woodside Lumber | 9/1 | 2143.70 |
| Woodside Lumber | 9/11 | 2135.40 |
| Weryerhaeuser | 9/5 | 3054.34 |
| Weryerhaeuser | 9/6 | 5973.74 |
| Weryerhaeuser | 9/12 | 3656.59 |
| Woodside Lumber | 9/18 | 5302.30 |
| Weryerhaeuser | 9/19 | 5160.60 |
| Woodside Lumber | 9/21 | 2549.40 |
| Weryerhaeuser | 9/26 | 1857.67 |
| Pemcoc | 9/28 | 3068.80 |
| | Total | 34902.54 |

THE HUNTINGTON NATIONAL BANK
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



PORTER'S PENINSULA LOGGING LLC
17985 4TH ST
ATLANTA MI 49709-9514

*Have a Question or Concern?*

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

## Huntington Business Checking 100     Account: -------9489

| Statement Activity From: 09/01/23 to 09/30/23 | | Beginning Balance | $1,009.00 |
|---|---|---|---|
| | | Credits (+) | 2,820.00 |
| | | Other Credits | 2,820.00 |
| Days in Statement Period | 30 | Debits (−) | 3,769.00 |
| | | Regular Checks Paid | 3,769.00 |
| | | Total Service Charges (−) | 5.00 |
| Average Ledger Balance* | 546.00 | Ending Balance | $55.00 |
| Average Collected Balance* | 546.00 | | |

* The above balances correspond to the
service charge cycle for this account.

## Other Credits (+)     Account:-------9489

| Date | Amount | Description |
|---|---|---|
| 09/13 | 1,200.00 | INTERNET TFR FRM CHECKING ▇▇▇▇▇ |
| 09/15 | 850.00 | INTERNET TFR FRM CHECKING ▇▇▇▇▇ |
| 09/22 | 770.00 | INTERNET TFR FRM CHECKING ▇▇▇▇▇ |

## Checks (-)     Account:-------9489

| Date | Amount | Check # | Date | Amount | Check # |
|---|---|---|---|---|---|
| 09/07 | 996.00 | 104 | 09/20 | 814.00 | 106 |
| 09/13 | 1,089.00 | 105 | 09/27 | 870.00 | 107 |

(*) Indicates the prior sequentially numbered check(s) may have 1) been voided by you 2) not yet been presented 3) appeared on a previous
statement or 4) been included in a list of checks.

## Service Charge Detail     Account:-------9489

| Date | Service Charge (−) | Waives and Discounts (+) | Description |
|---|---|---|---|
| 09/15 | 5.00 | | STATEMENT CHARGE |

## Service Charge Summary     Account:-------9489

| Previous Month Service Charges (−) | $5.00 |
|---|---|
| Total Service Charges (−) | $5.00 |

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned
subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. ▣ ®, Huntington ® and 24-Hour Grace ® are federally registered service marks of Huntington
Bancshares Incorporated. The 24-Hour Grace ® system and method is patented. US Pat. No. 8,364,581, 8,781,955, 10,475,118, and others
pending. © 2023 Huntington Bancshares Incorporated.

Statement Period from 09/01/23 to 09/30/23    Page 1 of 2

## Balance Activity

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 08/31 | 1,009.00 | 09/15 | 969.00 | 09/27 | 55.00 |
| 09/07 | 13.00 | 09/20 | 155.00 | | |
| 09/13 | 124.00 | 09/22 | 925.00 | | |



**In the Event of Errors or Questions Concerning Electronic Fund Transfers** (electronic deposits, withdrawals, transfers, payments, or purchases), please call either 1-614-480-2001 or call toll free 1-800-480-2001, or write to The Huntington National Bank Research - EA4W61, P.O. Box 1558, Columbus, Ohio 43216 as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic fund transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name, your business's name (if appropriate) and the Huntington account number (if any).
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error. We will investigate your complaint or question and will correct any error promptly.

**Verification of Electronic Deposits** If you authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can find out whether or not the deposit has been received by us, call either 1-614-480-2001 or call toll free 1-800-480-2001.

**Balancing Your Statement** - For your convenience, a balancing page is available on our web site https://www.huntington.com/pdf/balancing.pdf and also available on Huntington Business Online.

THE HUNTINGTON NATIONAL BANK
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



PORTER'S PENINSULA LOGGING LLC
17985 4TH ST
ATLANTA MI 49709-9514

Have a Question or Concern?

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

## Huntington Business Checking 100

Account: -------9476

| Statement Activity From: 09/01/23 to 09/30/23 | | Beginning Balance | $1,127.90 |
|---|---|---|---|
| | | Credits (+) | 34,902.54 |
| Days in Statement Period | 30 | Regular Deposits | 15,199.60 |
| | | Electronic Deposits | 19,702.94 |
| | | Debits (−) | 30,989.68 |
| Average Ledger Balance* | 7,452.26 | Regular Checks Paid | 9,984.25 |
| Average Collected Balance* | 7,159.29 | Electronic Withdrawals | 1,274.69 |
| | | Other Debits | 19,730.74 |
| * The above balances correspond to the service charge cycle for this account. | | Total Service Charges (−) | 87.85 |
| | | Ending Balance | $4,952.91 |

## Deposits (+)

Account:-------9476

| Date | Amount | Serial # | Type | Date | Amount | Serial # | Type |
|---|---|---|---|---|---|---|---|
| 09/01 | 2,143.70 | 178023115 | Brch/ATM | 09/21 | 2,549.40 | | Brch/ATM |
| 09/11 | 2,135.40 | 178023089 | Brch/ATM | 09/28 | 3,068.80 | 178023114 | Brch/ATM |
| 09/18 | 5,302.30 | 179221765 | Brch/ATM | | | | |

## Other Credits (+)

Account:-------9476

| Date | Amount | Description |
|---|---|---|
| 09/05 | 3,054.34 | WEYERHAEUSER NR EFTPAYMENT |
| 09/06 | 5,973.74 | WEYERHAEUSER NR EFTPAYMENT |
| 09/12 | 3,656.59 | WEYERHAEUSER NR EFTPAYMENT |
| 09/19 | 5,160.60 | WEYERHAEUSER NR EFTPAYMENT |
| 09/26 | 1,857.67 | WEYERHAEUSER NR EFTPAYMENT |

## Checks (-)

Account:-------9476

| Date | Amount | Check # | Date | Amount | Check # |
|---|---|---|---|---|---|
| 09/27 | 500.00 | 1501 | 09/20 | 6,276.89 | 1504 |
| 09/12 | 1,437.18 | 1502 | 09/22 | 709.18 | 1505 |
| 09/12 | 1,061.00 | 1503 | | | |

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. ⬢®, Huntington ® and 24-Hour Grace ® are federally registered service marks of Huntington Bancshares Incorporated. The 24-Hour Grace ® system and method is patented. US Pat. No. 8,364,581, 8,781,955, 10,475,118, and others pending. ® 2023 Huntington Bancshares Incorporated.

(*) Indicates the prior sequentially numbered check(s) may have 1) been voided by you 2) not yet been presented 3) appeared on a previous statement or 4) been included in a list of checks.

## Other Debits (-)

| Date | Amount | Description |
|------|--------|-------------|
| 09/01 | 59.52 | PURCHASE PAYPAL *WALMART COM  PAYPAL *WALMART COM 8009666546 CA XXXXXXXXXXXX9731 |
| 09/01 | 35.00 | PURCHASE INDIAN RIVER E  INDIAN RIVER E INDIAN RIVER MI XXXXXXXXXXXX9731 |
| 09/01 | 64.00 | PURCHASE BP#2928554CHATT  BP#2928554CHATT ATLANTA MI XXXXXXXXXXXX9731 |
| 09/05 | 209.34 | PURCHASE PONSSE NORTH AMERICA I  PONSSE NORTH AMERICA I MONICO WI XXXXXXXXXXXX9731 |
| 09/05 | 64.00 | PURCHASE BP#2928554CHATT  BP#2928554CHATT ATLANTA MI XXXXXXXXXXXX9731 |
| 09/05 | 489.98 | PURCHASE TRACTOR-SUPPLY-CO #063  TRACTOR-SUPPLY-CO #063 GAYLORD MI XXXXXXXXXXXX9731 |
| 09/05 | 64.69 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/06 | 9.99 | PURCHASE PAYPAL *NETFLIX.COM  PAYPAL *NETFLIX.COM 4029357733 CA XXXXXXXXXXXX9731 |
| 09/06 | 406.68 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/07 | 361.00 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/07 | 174.64 | Premco Financial InsPremium |
| 09/07 | 684.06 | Premco Financial InsPremium |
| 09/08 | 276.69 | PURCHASE PAYPAL *AM FORESTRY  PAYPAL *AM FORESTRY 8552646487 WI XXXXXXXXXXXX9731 |
| 09/08 | 100.00 | THE BOND EXCHANG BONDEXCHAN |
| 09/08 | 100.00 | THE BOND EXCHANG BONDEXCHAN |
| 09/11 | 27.53 | PURCHASE PAYPAL *WALMART COM  PAYPAL *WALMART COM 8009666546 CA XXXXXXXXXXXX9731 |
| 09/11 | 30.72 | PURCHASE BP#2929388FAIRVIEW QPS  BP#2929388FAIRVIEW QPS MIO MI XXXXXXXXXXXX9731 |
| 09/11 | 64.79 | PURCHASE BP#8701815ST IGNACEQPS  BP#8701815ST IGNACEQPS ST IGNACE MI XXXXXXXXXXXX9731 |
| 09/11 | 68.00 | PURCHASE FREDDIES FAMIL  FREDDIES FAMIL ATLANTA MI XXXXXXXXXXXX9731 |
| 09/11 | 373.19 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/11 | 360.00 | PURCHASE BP#2928620HILLMAN EQPS  BP#2928620HILLMAN EQPS HILLMAN MI XXXXXXXXXXXX9731 |
| 09/11 | 78.00 | PURCHASE MURPHY7602ATWAL  MURPHY7602ATWAL GAYLORD MI XXXXXXXXXXXX9731 |
| 09/11 | 77.00 | PURCHASE MURPHY7602ATWAL  MURPHY7602ATWAL GAYLORD MI XXXXXXXXXXXX9731 |
| 09/12 | 407.00 | PURCHASE FRONTIER TRUCK PARTS I  FRONTIER TRUCK PARTS I WAYLAND MI XXXXXXXXXXXX9731 |
| 09/12 | 30.00 | PURCHASE EXXON DORR TRUCK STOP  EXXON DORR TRUCK STOP WAYLAND MI XXXXXXXXXXXX9731 |
| 09/12 | 18.90 | PURCHASE FEDERAL FLUID POWER  FEDERAL FLUID POWER VESTABURG MI XXXXXXXXXXXX9731 |
| 09/12 | 78.42 | PURCHASE WILBER AUTO 0025995  WILBER AUTO 0025995 GAYLORD MI XXXXXXXXXXXX9731 |
| 09/12 | 16.43 | PURCHASE INDIAN RIVER CARQU  INDIAN RIVER CARQU INDIAN RIVER MI XXXXXXXXXXXX9731 |
| 09/12 | 56.00 | PURCHASE BP#2928554CHATT  BP#2928554CHATT ATLANTA MI XXXXXXXXXXXX9731 |
| 09/13 | 45.29 | PURCHASE MI KENWORTH GAYLORD  MI KENWORTH GAYLORD GAYLORD MI XXXXXXXXXXXX9731 |
| 09/13 | 150.00 | PURCHASE NORTHERN ENERGY INC  NORTHERN ENERGY INC GAYLORD MI XXXXXXXXXXXX9731 |
| 09/13 | 1,200.00 | INTERNET TFR TO CHECKING |
| 09/14 | 665.17 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/14 | 80.01 | PURCHASE SHELL SERVICE STAT  SHELL SERVICE STAT JOHANNESBURG MI XXXXXXXXXXXX9731 |
| 09/14 | 63.00 | PURCHASE BP#2928554CHATT  BP#2928554CHATT ATLANTA MI XXXXXXXXXXXX9731 |
| 09/15 | 850.00 | INTERNET TFR TO CHECKING |
| 09/18 | 340.24 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/18 | 255.00 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |

9476     01 02 000 00 N N N  EMT5 01 019 019    00122              075725              98711



## Service Charge Detail

Account:-------9476

| Date | Service Charge (−) | Waives and Discounts (+) | Description |
|------|--------------------|--------------------------|-------------|
| 09/15 | 29.35 | | INTL DEBIT CARD TRANS FEES |
| 09/15 | 3.50 | | ATM USAGE FEES |
| 09/15 | 50.00 | | WIRE TRANSFER FEES (OUTGOING) |
| 09/15 | 5.00 | | STATEMENT CHARGE |

## Service Charge Summary

Account:-------9476

| | |
|---|---|
| Previous Month Service Charges (−) | $87.85 |
| Total Service Charges (−) | $87.85 |

## Balance Activity

Account:-------9476

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 08/31 | 1,127.90 | 09/12 | 10,807.92 | 09/21 | 8,553.15 |
| 09/01 | 3,113.08 | 09/13 | 9,412.63 | 09/22 | 5,777.48 |
| 09/05 | 5,339.41 | 09/14 | 8,604.45 | 09/25 | 4,699.54 |
| 09/06 | 10,896.48 | 09/15 | 7,666.60 | 09/26 | 6,553.50 |
| 09/07 | 9,676.78 | 09/18 | 11,627.66 | 09/27 | 5,556.68 |
| 09/08 | 9,200.09 | 09/19 | 15,470.90 | 09/28 | 7,752.28 |
| 09/11 | 10,256.26 | 09/20 | 8,069.52 | 09/29 | 4,952.91 |

**In the Event of Errors or Questions Concerning Electronic Fund Transfers** (electronic deposits, withdrawals, transfers, payments, or purchases), please call either 1-614-480-2001 or call toll free 1-800-480-2001, or write to The Huntington National Bank Research - EA4W61, P.O. Box 1558, Columbus, Ohio 43216 as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic fund transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name, your business's name (if appropriate) and the Huntington account number (if any).
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error. We will investigate your complaint or question and will correct any error promptly.

**Verification of Electronic Deposits** If you authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can find out whether or not the deposit has been received by us, call either 1-614-480-2001 or call toll free 1-800-480-2001.

**Balancing Your Statement** - For your convenience, a balancing page is available on our web site https://www.huntington.com/pdf/balancing.pdf and also available on Huntington Business Online.

Statement Period from 09/01/23 to 09/30/23    Page 4 of 4

9476          02 02 000 00 N N N  EMT5 01 019 019    00122          075725          98712

23-20563-dob    Doc 72    Filed 10/25/23    Entered 10/25/23 13:35:03    Page 45 of 47



## Other Debits (-)

| Date | Amount | Description |
|---|---|---|
| 09/18 | 667.00 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/18 | 51.00 | PURCHASE FREDDIES FAMIL  FREDDIES FAMIL ATLANTA MI XXXXXXXXXXXX9731 |
| 09/18 | 28.00 | PURCHASE MURPHY7602ATWAL  MURPHY7602ATWAL GAYLORD MI XXXXXXXXXXXX9731 |
| 09/19 | 43.00 | PURCHASE BEACON AND BRI  BEACON AND BRI FREDERIC MI XXXXXXXXXXXX9731 |
| 09/19 | 177.57 | PURCHASE SCIENTIFIC BRAKE GAYLO  SCIENTIFIC BRAKE GAYLO GAYLORD MI XXXXXXXXXXXX9731 |
| 09/19 | 1,025.79 | PURCHASE BP#2928620HILLMAN EQPS  BP#2928620HILLMAN EQPS HILLMAN MI XXXXXXXXXXXX9731 |
| 09/19 | 71.00 | PURCHASE FREDDIES FAMIL  FREDDIES FAMIL ATLANTA MI XXXXXXXXXXXX9731 |
| 09/20 | 787.50 | PURCHASE AIS RENTAL GRAND RAPID  AIS RENTAL GRAND RAPID GRAND RAPIDS MI XXXXXXXXXXXX9731 |
| 09/20 | 75.00 | PURCHASE M46 AGO #22  M46 AGO #22 HOWARD CITY MI XXXXXXXXXXXX9731 |
| 09/20 | 46.00 | PURCHASE BEACON AND BRIDGE  BEACON AND BRIDGE CADILLAC MI XXXXXXXXXXXX9731 |
| 09/20 | 215.99 | PIONEER STATE MU BILLPAY ▮▮▮▮  PIONEER STATE M |
| 09/21 | 1,586.41 | PURCHASE CUMMINS INC - S4  CUMMINS INC - S4 SAGINAW MI XXXXXXXXXXXX9731 |
| 09/21 | 326.35 | PURCHASE POMPS TIRE 220  POMPS TIRE 220 TRAVERSE CITY MI XXXXXXXXXXXX9731 |
| 09/21 | 53.01 | PURCHASE FREDDIES FAMIL  FREDDIES FAMIL ATLANTA MI XXXXXXXXXXXX9731 |
| 09/21 | 100.00 | PURCHASE FREDDIES FAMIL  FREDDIES FAMIL ATLANTA MI XXXXXXXXXXXX9731 |
| 09/22 | 88.90 | PURCHASE MI KENWORTH GAYLORD  MI KENWORTH GAYLORD GAYLORD MI XXXXXXXXXXXX9731 |
| 09/22 | 590.63 | PURCHASE AIS RENTAL GRAND RAPID  AIS RENTAL GRAND RAPID GRAND RAPIDS MI XXXXXXXXXXXX9731 |
| 09/22 | 555.96 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/22 | 770.00 | INTERNET TFR TO CHECKING  092223 XXXXXXX9489 |
| 09/22 | 61.00 | PURCHASE BP#2928554CHATT  BP#2928554CHATT ATLANTA MI XXXXXXXXXXXX9731 |
| 09/25 | 227.26 | PURCHASE DOLLAR GENERAL #19843  DOLLAR GENERAL #19843 ATLANTA MI XXXXXXXXXXXX9731 |
| 09/25 | 714.39 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/25 | 75.29 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/25 | 61.00 | PURCHASE BP#2928554CHATT  BP#2928554CHATT ATLANTA MI XXXXXXXXXXXX9731 |
| 09/26 | 3.71 | PURCHASE FASTENAL COMPANY 01MIT  FASTENAL COMPANY 01MIT TRAVERSE CITY MI XXXXXXXXXXXX9731 |
| 09/27 | 311.16 | PURCHASE GRAND TRAVERSE RUBBE  GRAND TRAVERSE RUBBE TRAVERSE CITY MI XXXXXXXXXXXX9731 |
| 09/27 | 185.66 | PURCHASE FREIGHTLINER OF GRAND  FREIGHTLINER OF GRAND WYOMING MI XXXXXXXXXXXX9731 |
| 09/28 | 47.70 | PURCHASE SCIENTIFIC BRAKE GAYLO  SCIENTIFIC BRAKE GAYLO GAYLORD MI XXXXXXXXXXXX9731 |
| 09/28 | 747.50 | PURCHASE ATS FLEET SERVICE  ATS FLEET SERVICE GAYLORD MI XXXXXXXXXXXX9731 |
| 09/28 | 53.00 | PURCHASE SHELL SERVICE STAT  SHELL SERVICE STAT TRAVERSE CITY MI XXXXXXXXXXXX9731 |
| 09/28 | 25.00 | PURCHASE BEACON AND BRIDGE  BEACON AND BRIDGE FIFE LAKE MI XXXXXXXXXXXX9731 |
| 09/29 | 240.99 | PURCHASE MARATHON PETRO256354  MARATHON PETRO256354 GAYLORD MI XXXXXXXXXXXX9731 |
| 09/29 | 13.06 | PURCHASE ART'S AUTO & TRUCK PAR  ART'S AUTO & TRUCK PAR TRAVERSE CITY MI XXXXXXXXXXXX9731 |
| 09/29 | 1,357.15 | PURCHASE NORTHERN ENERGY INC  NORTHERN ENERGY INC GAYLORD MI XXXXXXXXXXXX9731 |
| 09/29 | 112.17 | PURCHASE GRAND TRAVERSE RUBBE  GRAND TRAVERSE RUBBE TRAVERSE CITY MI XXXXXXXXXXXX9731 |
| 09/29 | 1,014.00 | PURCHASE BP#2928554CHATTERS QPS  BP#2928554CHATTERS QPS ATLANTA MI XXXXXXXXXXXX9731 |
| 09/29 | 62.00 | PURCHASE FREDDIES FAMIL  FREDDIES FAMIL ATLANTA MI XXXXXXXXXXXX9731 |

## EXHIBIT D

### GENERAL UNSECURED CLAIMS

| CREDITOR: | AMOUNT: |
|---|---|
| Komatsu Financial Limited Partnership | $106,239.40 |
| Blarney Castle Oil Co. | $ 2,489.36 |
| Corrigan Oil Co. | $ 7,445.14 |
| Woodland Equipment Inc. | $ 5,737.63 |
| | ========= |
| | $121,911.53 |